UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY ALVARADO,<br><br>         Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>         Defendant. | Case No. CV 05-2469-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On April 5, 2005, Henry Alvarado ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for supplemental security income benefits. On May 12, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on October 12, 2005, defendant filed an Answer to Complaint. On January 4, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///
///
///

**BACKGROUND**

On March 13, 2003, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 78-82). Plaintiff claimed that, beginning on March 19, 2001, his paranoia, severe headaches, and suicidal thoughts prevented him from working. (AR at 93). After the Commissioner denied plaintiff's application for benefits, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 67-71, 72). On May 10, 2004, the ALJ conducted a hearing in Los Angeles, California. (AR at 43-66). Plaintiff appeared at the hearing without counsel and testified. (AR at 46-62). Barbara Miksic, a vocational expert, also testified. (AR at 63-65).

On July 20, 2004, the ALJ issued his decision denying benefits. (AR at 24-29). Therein, he concluded that plaintiff suffered from severe impairments of major depression, post-traumatic stress disorder, psychotic features, and substance addiction disorder, but found that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 25). The ALJ determined that plaintiff maintained the residual functional capacity to perform simple, unskilled, routine, and repetitive tasks with minimal contact with others, including his past work as a batch mixer and a dock loader. (AR at 28). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On July 26, 2004, plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council. (AR at 19). On December 11, 2004, the Appeals Council affirmed the ALJ's decision. (AR at 4-7).

///

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ failed to fully and fairly develop the record.

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision under 42 U.S.C. § 405(g) to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**I.  ALJ'S Duty to Fully and Fairly Develop the Record**

Plaintiff contends that the ALJ failed to fully and fairly develop the record. First, plaintiff claims that the ALJ erred by relying on the opinion of a State Agency physician whose opinion was rendered prior to when the majority of plaintiff's mental health

treatment notes were generated. Plaintiff also asserts that the ALJ erred in rejecting the opinion of the treating mental health physician in favor of the State Agency physician. Third, plaintiff claims that the ALJ erred in failing to recontact the treating physician or, in the alternative, order a consultative examination.

Defendant responds that plaintiff has the burden of establishing disability. If the court finds adequate evidence to make a disability determination, the ALJ does not have the duty to recontact any physicians. Here, defendant asserts that the ALJ based his decision solely on the evidence, which was adequate to make his determination that plaintiff was not disabled. Furthermore, defendant notes that the ALJ relied on both the opinion of the State Agency physician, as well as plaintiff's treatment records, which revealed normal mental status functioning or mild symptoms only. Thus, no further development of the record was necessary for the ALJ to render his decision.

An ALJ must fully and fairly develop the record and assure that plaintiff's interests are considered. See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). In carrying out this duty, the ALJ must "make every reasonable effort" to help the claimant gather his medical records. 20 C.F.R. § 416.912(d). Where the claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). But even when the claimant is represented by counsel, the ALJ must still fulfill his duty to develop the record. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (ALJ's duty to fully and fairly develop record exists even when claimant is represented by

4

counsel).  The ALJ's duty is heightened where the claimant's ability to protect his or her interests may be adversely affected by a mental impairment.  Bousquet v. Apfel, 118 F. Supp. 2d 1049, 1056 (C.D. Cal. 2000) ("The ALJ's duty to develop the record is heightened when a claimant's ability to protect his or her interests is adversely affected by a mental impairment."); DeLorme, 924 F.2d at 849 ("In cases of mental impairments, this duty is especially important.") (citations and internal quotations omitted).  Ultimately, however, plaintiff bears the burden of presenting evidence within his control that establishes his eligibility for benefits.  See 20 C.F.R. §§ 404.704, 416.912(a).

    First, plaintiff claims that the ALJ erred by relying on the opinion of Charles Stone, M.D., a State Agency physician, who rendered his opinion prior to the date when a majority of plaintiff's mental health treatment notes were prepared, which were between February 4, 2003 and April 14, 2004.  (AR at 239-74).  On March 28, 2003, Dr. Stone completed a Mental Residual Functional Capacity Assessment on plaintiff and based his assessment on medical records that were dated only from February 4, 2003 to March 19, 2003.  (AR at 208-11).  In his evaluation, Dr. Stone found plaintiff to be moderately limited in his ability to understand and remember detailed instructions and carry out detailed instructions.  (AR at 208).  Notably, Dr. Stone opined that plaintiff was not significantly limited in the other 18 categories involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (AR at 208-09).  Overall, Dr. Stone found only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace.  (AR at 229).  While plaintiff claims that the

ALJ erroneously based his residual functional capacity assessment on Dr. Stone's findings, the ALJ does not cite Dr. Stone's assessment in his decision as the primary basis for his determination. (AR at 26). Rather, the ALJ relied on plaintiff's treatment records as the basis for his decision and mentioned Dr. Stone's assessment as a confirmation of the records he already cited. (AR at 26). After describing the treatment records in detail, the ALJ wrote, "The assessment of the State agency psychiatric consultant would adequately allow for this determination." (AR at 26)(citations omitted). While Dr. Stone's evaluation was indeed rendered before the majority of the treatment notes involving plaintiff's mental impairments, the ALJ did not appear to rely on Dr. Stone's assessment when formulating his opinion. As such, the Court finds that the ALJ committed no error in that regard.

Plaintiff also asserts that the ALJ erred in rejecting the opinion of the treating mental health physician in favor of the State Agency physician. The treating physician, however, did not render an opinion with respect to plaintiff's disability. (AR at 25). Furthermore, the ALJ did not give significant weight to Dr. Stone's assessment when rendering his decision, as previously noted. Rather, the ALJ relied on the records of the treating physician, which he cited extensively in his decision. As such, the ALJ did not erroneously give greater weight to a non-treating physician over the opinion of a treating source.

Finally, plaintiff claims that the ALJ erred in failing to recontact the treating physician or, in the alternative, ordering a consultative examination. The ALJ's duty to develop the record is triggered only when there is ambiguous evidence or the record is

inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the evidence was not ambiguous and the record before the ALJ was not inadequate. In fact, plaintiff's treating records indicate that his physicians had assessed him with Global Assessment of Functioning[1] ("GAF") scores at a functioning level. On February 4, 2003, the treating physician diagnosed plaintiff with "major depression, recurrent" and a GAF score of 55.[2] (AR at 247). On February 4, 2003, February 27, 2003, and July 18, 2003, the treating physician assessed plaintiff with a GAF score of 60. (AR at 252, 255, 242). On August 29, 2003, the treating physician assessed plaintiff with a GAF score of 75.[3] (AR at 262). On February 4, 2004, the treating physician noted no significant findings and found plaintiff to have a "brighter affect; calm." (AR at 269). Finally, on April 14, 2004, May 17, 2004, and June 21, 2004, the treating physician assessed plaintiff with GAF scores of 60, 65,

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

[2] A GAF score between 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[3] A GAF score between 71 to 80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

and 70[4], respectively.[5] (AR at 274, 301, 303). Thus, the treating physician assessed plaintiff with progressively higher GAF scores. Notably, plaintiff scored a 70 on his most recent GAF assessment, a score that would categorize him in the uppermost spectrum of the "functioning pretty well" category. Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000). Thus, the records of plaintiff's own treating physician comports with the decision of the ALJ. Plaintiff, moreover, points to no evidence in the record that would have triggered the ALJ's duty to recontact the treating physician or send him to a consultative examiner. Overall, no ambiguity exists that would have triggered the ALJ's duty to develop the record further. As such, the Court finds that the ALJ complied with his duty to fully and fairly develop the record.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the

///

///

///

---

[4] A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[5] In the Joint Stipulation, defendant remarks the latter two GAF scores of 65 and 70 were "not before the ALJ." (Joint Stip. At 11).

proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 28, 2006

                                        /s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE